GRAND TRUNK RY. CO. et al. v. PARKS.

(Circuit Court of Appeals, Second Circuit. December 12, 1910.)

No. 82.

CARRIERS (§ 306\*)—LIABILITY FOR INJURY TO PASSENGER—JOINT LIABILITY— CONNECTING CARRIERS—DANGEROUS CONDITION OF CARS.

A through passenger train was operated from Chicago to New York, by the Grand Trunk Railway Company to Suspension Bridge and from there eastward by the Lehigh Valley Railroad Company. On reaching Niagara Falls, Ontario, the train was boarded by car cleaners, employed

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and paid by the Lehigh Company, who, while the train was passing from there to Suspension Bridge, cleaned the cars. The arrangement between the two companies under which this was done did not appear. Plaintiff, who was a customs inspector riding between such two points in the performance of his duties, without negligence on his part, slipped on a banana peel, which had been negligently left with other sweepings in the aisle of one of the cars by a cleaner, and was injured. *Held*, that both companies were liable for the injury as joint tort-feasors; the Grand Trunk Company for allowing its cars to become dangerous while passing over its own line, and the Lehigh Company because the negligence which created the dangerous condition was that of its servants, for which it was responsible.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1249–1251; Dec. Dig. § 306.*

Liabilities of connecting carriers for injuries to passengers, see note to Lehigh Valley R. Co. v. Dupont, 64 C. C. A. 485.]

In Error to the Circuit Court of the United States for the Western District of New York.

Action at law by Douglas J. Parks against the Grand Trunk Railway Company and the Lehigh Valley Railroad Company. Judgment for plaintiff, and defendants bring error. Affirmed.

This cause comes here upon appeal from a judgment in favor of defendant in error, who was plaintiff below. The action was brought to recover damages for personal injuries sustained by plaintiff, while engaged in his duties as United States customs inspector on board a train of the Grand Trunk Railway Company between Niagara Falls, Ontario, and Suspension Bridge, N. Y. He slipped upon a banana peel in the aisle of the car, claimed to have been deposited there with other sweepings by a car cleaner, who was engaged in cleaning the car preparatory to the surrender of the train to the Lehigh Valley Railroad Company at Suspension Bridge. It was a through train from Chicago to New York, operated to Suspension Bridge by the Grand Trunk, and from that point on by the Lehigh. The jury found a verdict against both defendants, as joint tort-feasors.

J. W. Ryan, for plaintiff in error Grand Trunk Ry. Co.
L. M. Bass, for plaintiff in error Lehigh Valley R. Co.
A. J. Thibaudeau, for defendant in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). The plaintiff boarded the train at Niagara Falls, Ontario, and proceeded along the aisles of the several cars from the rear to the front. When he had reached the first car, and was by the doorway with his right foot on the iron threshold of the door, he saw an object ahead of him that looked like newspapers lying on the floor right ahead of him, making a little pile. He stepped with his left foot over this pile, slipped and fell, and then, after being picked up, looked again at the pile, and saw it was made up of papers and dirt, with banana peeling and apple cores.

There was evidence showing that this pile was produced by the car cleaner when sweeping up the car; that it was left in the passageway; that on previous occasions the dirt and débris, when swept up, had been stowed away under the seats, or in some place which was not a thoroughfare for persons moving through the train. There was conflicting evidence as to some of the facts; but it seems too plain for

argument that, if the jury accepted the narrative of events relied on by the plaintiff, they were warranted in finding that the accident happened through some one's negligence. Indeed, that proposition seems not to be disputed, for the main reliance of each defendant is that the other defendant was alone responsible for the carelessness of the car cleaner. Both of them contend that the evidence affirmatively established that the plaintiff was guilty of contributory negligence; but there is no force in this contention. Upon the testimony that question was plainly for the jury, who were properly instructed by the court on that branch of the case, and whose finding thereon is conclusive.

The testimony showed that the car cleaners, one for each car of this train, were selected, employed, and paid by the Lehigh. They came aboard the train while it was still on the Grand Trunk's road for the purpose of having the cars cleaned before the Lehigh took possession of them at Suspension Bridge. This had been the practice for years. The Grand Trunk crew had nothing to do with the cleaning. How this arrangement between the two companies came about, or whether there was some contract between them regulating the matter and fixing the status of the cleaners, did not appear.

Upon this testimony we are satisfied that the Grand Trunk was responsible for the condition in which the cars were maintained while operated on its own road. If it allowed a car to become dangerous by accumulating dirt and banana peelings in its passageway and leaving it there, it is immaterial whether the individual whose carelessness put it in such a condition was one of its regular employés, or was one whom it temporarily borrowed from another road, in whose general employment he was, or was the employé of another road, whom it was accustomed to allow to come on its cars and there conduct operations which, if they were carelessly conducted, would make the car unsafe.

The car cleaner was selected, employed, and paid by the Lehigh, and was its servant. It might have made some arrangement with the Grand Trunk whereby he might have been temporarily turned over exclusively to the service of the latter; but the jury, who were charged on that branch of the case, found against the Lehigh on that proposition. Upon the testimony it is difficult to see how they could reach any other conclusion. The method of car cleaning followed by the two companies apparently was devised to benefit both. By beginning the operation before the train reached Suspension Bridge, the Lehigh secured clean cars the moment the train was turned over to it, without having to wait for that work to be done afterwards. It would seem that for some reason it undertook to do this cleaning itself, since it paid the cleaner's wages, and there is nothing to show that the Grand Trunk was to reimburse it for such expenditure when the work of cleaning was done on the Grand Trunk's road. The cleaner, when engaged in that occupation, was, for all that appears, still the servant of the Lehigh, and for his negligence his master should respond.

We do not find error in the medical testimony which was admitted over objection, and we need not consider any of the exceptions to the charge, in view of the statement, supra, as to the legal obligations of defendants.

The judgment is affirmed.